## In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

FILED
at 4 O'clock & 20 min P M
Date 9/14/06

United States Bankruptcy Court
Savannah, Georgia

| | |
|---|---|
| In the matter of: ) | Chapter 13 Case |
| ) | |
| EDWIN COLLINS ) | Number 05-42982 |
| SHIRLEY JEAN COLLINS ) | |
| a/k/a Shirley J. Tuttle Collins ) | |
| ) | |
|   *Debtors* ) | |
| ) | |
| INGOMAR, L.P., ) | |
| its assignees and/or successors in interest ) | |
| ) | |
|   *Movant* ) | |
| ) | |
| v. ) | |
| ) | |
| EDWIN COLLINS, ) | |
| SHIRLEY JEAN COLLINS, ) | |
| SYLVIA FORD BROWN, Trustee ) | |
| ) | |
|   *Respondents* ) | |

### MEMORANDUM AND ORDER
### ON INGOMAR, L.P.'S OBJECTION TO CONFIRMATION

The Debtors' case was filed on November 14, 2005. Their original Chapter 13 Plan provided for the continuation of direct payments to Ingomar, L.P. (the "Lender") to satisfy its claim, which is secured by a mobile home and 1.5 acres of land in Eden, Georgia. *See* Dckt. No. 3 (October 14, 2005). The Lender objected to the confirmation of the Plan. It asserted that the maturity date of its promissory note was August 22, 2005, that the entire pay-off balance of $43,226.45 was due and payable at the time the case was filed, and that

AO 72A
(Rev. 8/82)

that balance was required by law to be paid in full during the pendency of the Debtors' case. *See* Dckt. No. 8 (December 19, 2005). The Debtors then modified the Plan to value the Lender's collateral at $22,724.00 and to pay its secured claim in full, with interest, during the life of the Plan. In addition, the modified Plan proposed to pay a one percent dividend to unsecured creditors, which includes the Lender's unsecured deficiency balance of $20,502.45. *See* Dckt. No. 20 (May 30, 2006).

The Lender filed an objection to the modified Plan asserting that the Debtors are not permitted to modify its note because it holds a claim secured only by a security interest in real property that is the Debtors' principal residence. *See* Dckt. No. 34 (June 14, 2006); Dckt. No. 39 (July 21, 2006).[1] It contends that the Debtors' actions would be in violation of 11 U.S.C. § 1322(b)(2).[2] In addition, the Lender argues that the Plan is not adequately funded to pay its claim in full and insinuates that the Debtors did not file their Plan in good faith.

At the evidentiary hearing conducted to rule on the Lender's objection, the only witness was Mrs. Collins. Based on her testimony and applicable law, I make the following Findings of Fact and Conclusions of Law.

---

[1] The Lender also moved the Court to allow it to file a late proof of claim. *See* Dckt. No. 26 (June 5, 2006). Because the Debtors do not wish to object to the Lender's request, the Lender's motion as to that matter will be granted.

[2] Hereinafter, all Section references are to Title 11 of the United States Code.

## FINDINGS OF FACT

Mrs. Collins lives with her husband, and both of them are in extremely poor health. Both the 1.5 acres of land in Eden, Georgia, and the Debtors' mobile home are titled in the husband's name. The mobile home has not been installed on a permanent foundation. It sits on wheels with the trailer tongue still in place and has an unattached porch sitting alongside one of the entrance doors that can be removed without any damage.

The Debtors were married in 1995, and Mrs. Collins moved into this residence with Mr. Collins, who had owned the real property free and clear since 1980 and had purchased the mobile home and placed it on the real property in 1983. In 1998, Mr. Collins borrowed $24,999.00 from the Lender. The principal balance has remained essentially the same inasmuch as the Debtors have made fewer than one year's worth of payments in the aggregate during the seven years that the loan has been outstanding.

The Lender did not perfect its security in the mobile home by recording its interest on the mobile home's Certificate of Title. Instead, it received a promissory note and a deed to secure debt covering the real property in Eden, Georgia, and a 1992 Peachtree mobile home as collateral. *See* Dckt. No. 39, Ex. D. (July 21, 2006).

## CONCLUSIONS OF LAW

Pursuant to Section 1322(b)(2), the Debtor's Plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real

AO 72A
(Rev. 8/82)

3

property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2). The Lender relies on the Eleventh Circuit case of <u>Walker v. Washington (In re Washington)</u>, 837 F.2d 455 (11th Cir. 1988) as establishing that under these facts and Georgia law, the mobile home should be considered a fixture of the real property beneath it. If the Lender is able to prove such facts, its claim would fall under the protection of the first exception listed in Section 1322(b)(2). The Debtors dispute this argument and claim that the mobile home is not a part of the real property. *See* Dckt. No. 41 (July 28, 2006). Since the Lender's claim is not secured "only" by real property but by real property *and* the mobile home, the Lender's secured claim does not fall within the exception carved out by Section 1322(b)(2). As a result, the Debtors contend, they may modify the rights of the Lender in their Plan.

The seminal case in the Eleventh Circuit that confronted this issue is <u>Washington</u>. In that case, the Eleventh Circuit noted that under Georgia law, a mobile home is initially considered a vehicle that must be issued a certificate of title. <u>Washington</u>, 837 F.2d at 456 (citing O.C.G.A. § 40-3-20). The court also recognized that Georgia law considers any object intended to remain permanently in place to be a fixture that constitutes a part of the real property. <u>Washington</u>, 837 F.2d at 456 (citing O.C.G.A. § 44-1-6(a)). Therefore, in certain circumstances, a mobile home may lose its classification as personal property and instead be considered a part of the real property beneath it. The Eleventh Circuit listed three factors that a court must examine when determining whether an object is personal property or has become a part of the real property. First, a court should look to the

degree to which the object has become integrated with or attached to the real property. If the object can be removed from the real property without "serious injury," it is not considered a fixture under Georgia law. Washington, 837 F.2d at 456. Second, a court must consider the intention of the parties with regard to the status of the object. Id. at 456-57. Third, a court must determine whether there is unity of title between the personalty and the realty at the time the object allegedly became part of the real property. Id. at 457.

In Washington, the court first found that the debtor's mobile home had a substantial foundation as well as improvements around the home that indicated that the home was permanently attached to the real property. Id. Second, the lender had appraised both the mobile home and the real property as a unit, which indicated the intent of both parties to treat the mobile home as a part of the real property. Id. Third, the debtor acquired title to the land upon the lender's agreement to refinance the loan on the mobile home, which created unity of title. Id. As a result, the court affirmed the decisions of the bankruptcy court and district court that concluded that the debtor's mobile home was no longer a vehicle but a part of the real property underneath it. Id.

In the present case, Mrs. Collins testified that the mobile home does not have a permanent foundation to the real property beneath it. The wheels and axles remain attached to the mobile home as well as the tongue required to pull the mobile home. In addition, the Debtors assert that the mobile home may be easily removed from the real property without serious injury to either it or the real property.

AO 72A
(Rev. 8/82)

5

The Lender does not contradict this testimony. Instead, it states that "[true] and correct copies of various Broker's Price Opinions from 1999 through and including 2005 with pictures attached of the real property do not conclusively demonstrate one way or the other as to whether the mobile home has a foundation." Dckt. No. 39, p. 2 (July 21, 2006). Furthermore, "the status of the foundation has not been conclusively demonstrated other than by oral testimony." Id. at 3.

Based on this evidence, the Court concludes that the first Washington factor favors the Debtors. Providing only blanket assertions that there is uncertainty as to the status of the mobile home's foundation, the Lender has failed to produce evidence that sufficiently controverts Mrs. Collins's testimony concerning the degree to which the Debtors' mobile home has been attached to the real property. Her testimony supports the Debtors' contention that their mobile home has not lost its "mobile" quality. See Vanderbilt Mortgage & Fin., Inc. v. Squittiori (In re Squittiori), 1991 WL 11002467, *3 (Bankr. S.D. Ga. 1991); see also Kent v. Bank of Thomson (In re Kent), 1991 WL 11002449, *2 (Bankr. S.D. Ga. 1991)("The evidence clearly established that the mobile home remains just that, a mobile home."). Because a mobile home is presumed to be a vehicle unless all the Washington elements are proven, this finding concludes the Court's inquiry into the Lender's contention that the Debtors' mobile home became incorporated into the real property. Their mobile home is not attached to the real property beneath it in such a manner that it became a fixture on the real property. The Debtors have carried their burden in demonstrating that their Plan does not violate the provisions of Section 1322(b)(2). As a result, the Debtors may modify the

Lender's claim as it does not fall within the exception carved out by Section 1322(b) for claims secured *only* by a security interest in real property that is the Debtors' principal residence. *See* 11 U.S.C. § 1322(b)(2).

### ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the Lender's objection to the confirmation of the Debtors' Chapter 13 Plan is DENIED. The Lender's motion to allow its late claim in this case is GRANTED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 14th day of September, 2006.